# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## JOHN WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-08325     John Fowlkes, Judge**

---

**No. W2012-00746-CCA-R3-PC  -  Filed May 16, 2013**

---

The petitioner, John Williams, appeals the denial of his petition for post-conviction relief. The petitioner is currently serving an effective sentence of 161 years following his convictions for five counts of especially aggravated kidnapping and three counts of aggravated robbery. In this appeal, he contends that his petition for relief was erroneously denied because his right to a public trial was violated and that trial counsel was ineffective in failing object to or raise that violation. Following review of the record, we affirm the denial of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Robert C. Brooks, Memphis, Tennessee, for the appellant, John Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Teresa McClusker, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The facts underlying the petitioner's convictions for five counts of aggravated

kidnapping and three counts of aggravated robbery are set forth in the original opinion filed by this court in the post-conviction proceedings, and it is not necessary to the outcome of this appeal to restate them in their entirety. *John Williams v. State*, No. W2010-01013-CCA-R3-PC (Tenn. Crim. App., at Jackson, Sept. 1, 2011). In summary, the petitioner, along with five other individuals, in an apparent attempt to locate a man whom had previously broken into the petitioner's home, terrorized their victims, including a seven-year old child. The victims were held at gunpoint, threatened with death, some were forced into the trunk of a car, some were viciously beaten, and eventually money was taken from three of the victims. *Id*. Despite his assertions that he was not involved in these events, the petitioner was found guilty following a jury trial and sentenced to an effective term of 161 years in the Department of Correction. This court affirmed the convictions following a direct appeal. *State v. Jarvis Williams and John Williams*, No. W2002-03010-CCA-R3-CD (Tenn. Crim. App., at Jackson, Dec. 23, 2003), *perm. app. denied*, (Tenn., May 10, 2004).

Thereafter, the petitioner filed a petition for post-conviction relief alleging that the trial court had violated his constitutional right to a public trial and that trial counsel rendered ineffective assistance of counsel by failing to object to the exclusion of the petitioner's friends from the trial or to raise that issue on direct appeal. *Williams*, No. W2010-01013-CCA-R3-PC. A hearing on the matter was held in February 2010, after which the post-conviction court denied relief. The petitioner appealed to this court, which concluded that the petitioner had waived his public trial claim by failing to raise it in the trial of his case or on direct appeal. However, this court concluded that the post-conviction court had failed to make findings with regard to the petitioner's claim of ineffective assistance of counsel. Therefore, the case was remanded to the post-conviction court "for findings of fact and conclusions of law on the [p]etitioner's ineffective assistance of counsel claim." *Id*. No new hearing was held on the matter and, on March 28, 2012, the post-conviction court entered a written order denying relief on the ineffective assistance of counsel claim, which set forth findings of fact and conclusions of law supporting the denial. The petitioner has timely appealed.

The facts to be utilized in our review of the petitioner's issue were adduced from the original appeal of the denial of post-conviction relief as stated in this court's opinion:

At the post-conviction hearing, Derrick Rucker testified that he was employed at an auto body shop until he injured his back six weeks before the hearing. He said he and the Petitioner were close friends and knew each other for more than fifteen years. He said that he was present for the Petitioner's trial on the morning of September 4, 2002, and that he watched two or three people testify before the lunch recess. He said that he went to lunch with two other friends and that when they returned, the bailiff told them they could not

enter the courtroom for a security purpose. He denied that any problems occurred that morning or that the judge or bailiff spoke to him or his friends about their behavior or appearance. He said there was nothing disruptive or improper about their behavior or appearance. He said his purpose for going to court was to support his friends because the Petitioner's aunt was unable to attend the trial.

On examination by the court, Mr. Rucker testified that more than eight people were involved in the trial and that multiple people were in the audience. He said the case was "high profile" and covered extensively by the television news. He remembered that the charges included violent crimes and thought the case involved attempted murder. He said that the media tried to make it look like the case was related to gang activity but that he was not a "gangster" and neither were his friends. He said he and his two friends were the only persons kept out of the courtroom. He said his past convictions included burglary, possession of marijuana, and some misdemeanors.

On further direct examination, Mr. Rucker testified that his felony drug conviction was in 2004 and that he was last released from custody on July 7, 2008. He said he had no problems with the law since then.

On cross-examination, Mr. Rucker agreed that the Petitioner's charges were "something similar" to especially aggravated kidnapping and aggravated robbery. He agreed there were at least three victims whom he saw ready to testify and said he also thought a little boy was a victim. He said that he and his friends asked why they could not return to the courtroom and that the bailiff would tell them only that it was for a security reason. On examination by the court, Mr. Rucker testified that he went through the security system at the courthouse on the day of the trial.

Troy Hughlett testified that he had been employed for two years at a warehouse. He said he and the Petitioner had been good friends for fifteen or twenty years. He said he was in the courtroom on the morning of September 4, 2002, with Mr. Rucker and Mario Wrenthrob. He said that the petitioner's family was not there that morning and that he attended the trial to support the Petitioner. He said that while he and his friends were at the trial, no one spoke to them about their behavior or appearance. He said that when the court recessed, he and his friends went downstairs in the courthouse to eat lunch. He said that when they tried to return to the courtroom, the bailiff stopped them and said they had been barred. He said the bailiff did not explain the

reason.

On cross-examination, Mr. Hughlett testified that the bailiff did not give him or his friends an opportunity to ask why they had been barred from the courtroom. He agreed that many people were in the courtroom and that it was a newsworthy case. He said he did not remember the charges against the Petitioner or anything else about the case. He said he had no felony convictions.

On examination by the court, Mr. Hughlett testified that he did not attend the trial after that day. He said he and his friends heard one woman testify before the lunch recess. He said he was not present for the jury selection. He said the Petition and the Petitioner's brother were on trial.

Mario Wrenthrob testified that he had been employed at McDonald's for about a year and that he and the Petitioner had been friends for many years. He said he attended the first day of the Petitioner's trial to support the Petitioner and "to see what was really going on." He did not think the Petitioner's family was able to attend. He said the neither the judge nor the bailiff told him or his friends their clothing or behavior was inappropriate and that there was nothing inappropriate about their clothing or behavior. He said that he left the courtroom for the lunch recess with his friend and his cousin and that when they returned, they were told they could not enter. He said the only reason given was a "security purpose." He said he knew of no one else who was not allowed to enter the courtroom.

On cross-examination, Mr. Wrenthrob testified that he asked bailiff why they could not reenter the courtroom but that the bailiff would only say it was for security reasons. He said they left after they were barred. He did not remember news personnel at the trial or whether the case was gang-related. He said he had been convicted of a misdemeanor marijuana charge but not a felony.

On the court's examination, Mr. Wrenthrob testified that when the bailiff told him and his friends they could not enter the courtroom, the door had closed but they were about to enter. He denied being asked to leave while court was in session.

The petitioner's counsel testified that he practiced primarily in criminal defense. He said that Mr. Rucker looked "vaguely familiar" but that he had

never seen Mr. Hughlett or Mr. Wrenthrob.

At this point, the trial court noted for the record:

> [H]is friends all left. And one of them I believe Mr.
> Rucker was trying to talk with [the petitioner] when he was
> leaving. The officers had to tell him not to communicate with
> [the petitioner]. His close friends are now gone.

Counsel testified that he vaguely remembered that someone was told to leave the courtroom at the trial because of a security issue but that he did not remember specific details. He said he reviewed his notes from the trial and did not find any mention of people excluded from the trial. He said that it was a difficult trial and that he was occupied with the job at hand. He remembered that a bailiff mentioned the exclusion of some individuals for security reasons. He said, "It didn't shock me to the point that I objected or to the point that I took notes on it." He said he would usually note anything that might need to be raised in a motion for new trial or on appeal.

Counsel testified that he thought he was told when he returned from the lunch recess by either a bailiff or the judge about the exclusion of individuals. He did not know if the Petitioner was told. He did not remember any discussion in court regarding whether the individuals should be excluded. He said that if the trial court had explained that it was considering the exclusion, he would have objected because his client needed support. When asked why he did not raise an objection or raise the issue in the motion for new trial, he said he did not remember. He said he reviewed the trial transcript and his notes but found no mention of the individuals' exclusion from the courtroom. He noted that it had been eight years since the trial. He agreed it was a possibility that there was "nothing to remember" about the issue.

Counsel testified that around the time of this trial and in the same courtroom, he was involved in a murder trial during which an individual or two were asked to leave because of their clothing. He said that as he tried to remember what happened in this trial, he began to confuse the two. He said the courtroom audience for the Petitioner's trial was divided into prosecution and defense sides. He said that the case involved seven victims and that there was a great deal of support on the prosecution's side but very little on the Petitioner's side. He did not remember meeting the Petitioner's parents and did not remember any of the Petitioner's family attending the trial.

On cross-examination, counsel testified that he had practiced criminal law for over ten years and that he had represented defendants in ten to fifteen jury trials and about the same number of bench trials. He said the Petitioner and his brother were both charged with multiple counts of especially aggravated kidnapping and aggravated robbery. He agreed that the District Attorney's Office labeled the Petitioner's case a "gang case" and that the trial prosecutor was the gang crime prosecutor. He said the trial lasted at least five days. He said four of the seven victims knew the Petitioner before the offenses occurred. He said he did not remember if the Petitioner asked him to object when he friends were barred from the courtroom. On redirect examination, counsel testified that the did not know whether the Petitioner was aware of his friends' exclusion from the courtroom during the trial.

On examination by the trial court, counsel testified that he was aware during the trial that the Petitioner had friends there in support of him and that when the bailiff told him individuals were excluded, he knew they were supporters of the Petitioner. He said he reviewed the trial transcripts and found no mention of the individuals exclusion. He said that he hoped he would have objected and asked for a hearing if the Petitioner told him that he friends were excluded but that he did not recall whether the Petitioner said anything. He said that the State's witnesses were terrified and that the atmosphere was tense.

The petitioner testified that his trial began on September 4, 2002, and lasted four days. He said that Mr. Rucker, Mr. Hughlett, and Mr. Wrenthrob were his good friends and that he had known them for fifteen or twenty years. He said they had nothing to do with the offenses in the case and were at the trial to support him. He said his family was not at the trial because counsel told him the case would be continued. He said that he was surprised that the trial started when it did. He said that his three friends were in the courtroom the first morning of the trial but not after the lunch recess and that he learned of their exclusion when he called home that night. He said his friends did not cause a disruption with their behavior or appearance. He did not remember if the judge told him about the exclusion and said he would have asked counsel to object if he had known.

On cross-examination, the Petitioner testified that to his knowledge, counsel did not know about his friends' exclusion. He denied that his friends caused a disruption when they left the post-conviction hearing. He agreed that one friends said something to him before leaving and said that the friend asked

if he wanted some money on his books. He denied that his friends were smiling and laughing and that one friend gave him a sign with his hands. He said he did not see his friends do anything wrong at the post-conviction hearing or the trial. He said that his family lived in Chattanooga and that they offered to attend the trial, but that he told them he was okay and they did not need to attend.

On redirect examination, the Petitioner testified that he thought he said something to counsel about his friends' exclusion but that he was not sure. He said that although he asked counsel to include the issue on appeal, counsel refused. He agreed that if his family lived in Memphis, he would have asked them to attend, but he said that the six-hour drive from Chattanooga was too much for them when he already had friends there to support him. On recross-examination, the Petitioner testified that the State appointed counsel to represent him on appeal.

On further redirect examination, the Petitioner testified that when his friends asked during the post-conviction hearing if he wanted money on his books, it meant on his account at the jail commissary. In response to a question from the court, the Petitioner agreed court officers told his friends to stop talking to him during the post-conviction hearing and to leave the courtroom. The trial court accepted a copy of the trial transcript as an exhibit and requested that defense counsel mark the section containing the lunch recess at issue for the court's review.

The prosecutor testified that she vaguely remembered an incident during the first day of the trial when the judge would not allow three young men to return to the courtroom after the lunch recess. She said that she was assigned to the District Attorney's Office gang unit at the time of the trial and that the unit considered the Petitioner's case to be gang-related. She said that there were seven victims and six defendants in the case and that there were many people present in the courtroom during the trial. She said the victims were frightened and easily intimidated. She said they told her that people in the courtroom were gesturing and making faces at them or saying things. She told the trial court, and it ruled that none of the victims had to "go through that" and excluded the three individuals. She said that one of the victims recognized at least one of the excluded individuals and that the court officer obtained the individuals' names. She said her conversation with the judge was not on the record but was held openly in court.

On examination by the court, the prosecutor testified that she received an except of the trial transcript provided by the Petitioner's post-conviction counsel. She said that Ms. Somerville was on the witness stand before and after the exclusion occurred and that Ms. Somerville's young son still had to testify. She said specific individuals were brought to her attention and were excluded from the courtroom. She said that the trial court did not address the excluded individuals because the court ruled to exclude them before they returned to the courtroom and that after the ruling, the bailiff did not admit them. She agreed the incident occurred during the second day of testimony and third day of the trial. She said testimony that day began with Omar Coleman, who was followed by Ms. Somerville and her son. On redirect examination, she testified that the jury was not in the courtroom when she brought the witnesses' concern to the trial court's attention or when the court ruled to exclude the individuals.

A review of the trial transcript shows that on September 5, 2002, three individuals were, in fact, barred from the courtroom: The trial court said the following:

> "The court: All right. The three young men that were seated on this side of the courtroom early this morning. They're not here now. They're not to be allowed back in the courtroom for the duration of the trial. We can't have the conduct that is threatening in any manner or suggest intimidation in any manner. And so if that continues they'll just be kicked out of the courtroom. It's as simple as that. Bring in the jury, please."

*Id*.

In a written order, the post-conviction court again denied relief finding that trial counsel was not ineffective. The petitioner has again appealed the ruling.

**Analysis**

On appeal, the petitioner frames his issue as follows:

Whether the [petitioner's] right to a public trial was violated and/or whether defense counsel was ineffective in failing to raise the issue. Three of the [petitioner's] friends, the only people in attendance in support of the [petitioner], were excluded by the trial court without complying with a single

-8-

requirement for the partial closure of a trial. Defense counsel failed to object or subsequently raise the issue. Prejudice is presumed.

From the wording of this issue, as well as the argument contained in the petitioner's brief and reply brief, it is apparent that he is again asking for review of the issue of whether he was denied his right to a public trial. In fact, he makes clear in his reply brief that he is again raising that specific issue. We agree with the petitioner that the issue is separate and distinct from an ineffective assistance of counsel claim and can be raised on post-conviction. However, his argument ignores that the issue has already been addressed by this court on post-conviction review. In the prior appeal, this court found that the issue had been waived. The case was remanded back for findings of fact and a ruling on the issue of ineffective assistance of counsel. Therefore, that is the only issue properly before this court at this time, and it will be reviewed pursuant to that applicable law. The petitioner may not again raise an issue which has been previously determined by this court.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

In denying relief on this issue, the post-conviction court stated:

. . . [T]his Court must make a fair assessment of performance without the distorting effects of hindsight, to reconstruct the circumstances surrounding [the] challenged conduct, and evaluate the conduct from Trial Counsel's

-10-

perspective during the trial. After reviewing the circumstances faced by Trial Counsel in this cause, this Court finds that Trial Counsel provided effective performance. Nothing occurred during the trial to undermine confidence in the outcome.

It is reiterated that the testimony of Petitioner's friends w[as] not credible. This Court notes that during the trial, when the three witnesses were denied reentry, they were never identified to the Trial Court as being friends and supporters of Petitioner. Also, none of Petitioner's friends contacted Trial Counsel during or after the trial in order to lodge complaints or objections to being removed. Further, they lack credibility in light of their actions when leaving the courtroom during the post-conviction hearing, where they were ordered to stop speaking with Petitioner and were escorted out of the courtroom.

Petitioner's post-conviction testimony does not support his cause. He said his three friends were in the courtroom on the first morning of the trial, but were not there after the lunch recess. He didn't know they had been excluded until he called home that night. Yet, throughout the remainder of the trial, he did not inform Trial Counsel of the exclusion. Petitioner testified that, to his knowledge, Trial Counsel did not even know about the exclusion. It appears to the Court that Petitioner's friends were never identified as supporters until they testified in the Post Conviction hearing, some eight years after the trial. Thus, this entire issue was insignificant to Petitioner and not important enough to even mention to his lawyer. Further, and for the same reasons, Petitioner's allegations that he asked Trial Counsel to appeal the exclusion issue is not credible.

Finally, Trial Counsel testified that he had never seen the three witnesses before, although one of them looked somewhat familiar. He vaguely remembered someone telling him that a person had been removed from the courtroom for security reasons. He said it didn't shock him to the point of objecting nor did he make any reference to the incident in his notes. Trial counsel's practice was to put in his notes anything that was significant enough to be raised in a motion for a new trial or appeal. No such note was made concerning this issue. In addition, Petitioner never complained to Trial Counsel or asked him to object at any time during the trial about exclusion of his friends.

Trial Counsel's primary concern was the serious nature of the case and

defending Petitioner against the charges. He indicated that it was a difficult trial, lasting at least five days, and he was preoccupied with the job at hand. Petitioner and his codefendant were charged with multiple counts of especially aggravated kidnapping, and aggravated robbery. It was a gang case that attracted considerable media attention. There were at least seven victims who were terrified, and the atmosphere surrounding the trial was tense.

Again, Petitioner failed to prove by clear and convincing evidence that his Trial Counsel was ineffective.

Petitioner has also failed to show that he was prejudiced by action or inaction of his counsel. This Court is mindful of that fact that if the record shows a public trial violation, prejudice is implied. However, Petitioner waived his public trial claim by failing to raise it in the trial court. Thus, prejudice must be viewed by the *Strickland* standard. Nothing has been shown to undermine confidence in the outcome of the case. Further, even if counsel had objected to the exclusion, the outcome of the trial would not have been different. Thus, Petitioner is not entitled to relief on this claim.

In their argument against relief in this case, the State relies heavily upon this court's opinion in the petitioner's co-defendant's post-conviction. *See Jarvis Q. Williams*, No. W2012-00052-CCA-R3-PC (Tenn. Crim. App., at Jackson, Dec. 27, 2012). In that case, this court determined that the co-defendant's counsel was not ineffective for not properly addressing and preserving the public trial issue. The proof presented in that case was the testimony of Mr. Rucker and Mr. Hughlett, whose testimony was not found to be credible by the post-conviction court. *Id*. While acknowledging that the conclusion reached in that case is not binding in the instant case, the State urges that it should be heavily considered.

The petitioner, on the other hand, argues that the co-defendant's case is distinguishable because the co-defendant failed to raise the actual issue of denial of his right to a public trial separately from the issue of ineffective assistance of counsel. While we agree that only the petitioner did in fact raise the public trial violation on post-conviction, we fail to see how that distinguishes the case on the issue of ineffective assistance of counsel. As previously noted, that is the only issue properly before the court at this time, and the only one which we shall consider. The violation of the right to a public trial issue has been waived, as previously concluded by this court. All the petitioner's arguments to the contrary are without merit, including that prejudice should be presumed. Likewise, his assertions that the post-conviction court's credibility determinations and its determination regarding the confidence in the outcome of the trial are irrelevant are incorrect. Rather, as appropriately applied by the post-conviction court, it is the applicable ineffective assistance of counsel

standards which govern the outcome of the case.

After review of the record, we conclude that nothing in the record preponderates against the post-conviction court's findings. We agree with the post-conviction court's conclusion that there is not sufficient evidence to establish that trial counsel was even aware of the exclusion of the petitioner's friends. While trial counsel testified that he vaguely remembered people being barred from the courtroom because of threatening behavior, he did not deem the exclusion important enough to even reference it in his notes. Nor is there sufficient evidence in the record to support that trial counsel was aware that the men excluded were in fact friends of the petitioner. While we agree that the petitioner was "under no obligation to tell trial counsel anything," had he done so and informed trial counsel of the situation, trial counsel might well have taken the actions the petitioner now complains that he didn't. As pointed out by the State, effective assistance of counsel requires neither perfection nor omniscience on the part of trial counsel. *See Moffitt v. State*, 29 S.W.3d 51, 55 (Tenn. Crim. App. 1999). Trial counsel cannot be found defiecient for failing to take actions to remedy a situation he was not aware of. The petitioner bears some responsibility in this case.

Nor has the petitioner established his claim with regard to prejudice. He has made no offer of proof with regard to how the exclusion of these three men who were acting in a threatening and intimidating manner to other witnesses would have changed the outcome of the trial. Nor has the petitioner shown that if a hearing had been held on the exclusion that the men, who again were threatening witnesses, would have been allowed to remain in the courtroom. The statement made by the trial court on the record that such behavior would not be tolerated implies otherwise. The petitioner has failed to meet his burden of proof and is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-13-